Would you please stand up and identify yourselves? Morning, I'm Michael Rasek on behalf of the plaintiff's felon. Rosa Tumialan on behalf of State Farm. Say that again. Rosa Tumialan. Okay. Basically, I think you know our procedure. We're pretty easy as long as you don't go forever. So if we ask a lot of questions, we'll give you additional time. And, by the way, I just want to apologize. We couldn't do better on that settlement case. Sorry. It's not over yet. All right. It seemed like we ran out of time. All right. Go ahead, guys. Good morning, Your Honors. As I said, my name is Michael Rasek. I'm here on behalf of the plaintiff appellant, Antoinette Iacullo, who was the administrator of the estate of her son. This is the case where her son David was a resident of the basement in his grandmother's home. There was a fire that occurred. He unfortunately died. And Antoinette asked State Farm what she should do. State Farm said, well, about her son anyway. And State Farm said, well, sue your mother and then we'll respond. And I think they actually used the words pay. Well, I'm sure they didn't mean it at that point. And then the question is, what should have happened at that point? She did what she was told to do. She filed her case against her mother, Marie. Marie turned it over to State Farm. State Farm did what it should do. It did a check, an ELCO check. I'm using ELCO to refer to the ELCO case. And under ELCO, State Farm had to ask itself a series of questions. Is there a policy? Yes, because there was a premium paid. It's not as if there's an alternative. The grandson is either first party or third party. It's one or the other. So the advice was let's try the third party. And it's not like they misled the plaintiff, is it? No, no. Because there's nothing else? No. There were no alternatives that would have opened the door anyway. No, I'm not suggesting that State Farm misled Antoinette at that point. I'm just explaining what happened, that's all. I did not mean to indicate that they misled her anyway. The point is, though, that when State Farm gets that complaint, they run an ELCO check. Was there a policy? Yes, because a premium was paid. Was there an insured? Yes, Marie is the insured. Was there anything in the complaint that's on its face, automatically precluded coverage? No. Did State Farm have an opportunity to defend? Well, yes, they did. They got the complaint immediately. They had plenty of opportunity to defend. Once they run through the ELCO checklist, State Farm has either got to defend under a reservation of rights or file a declaratory to raise what it calls its first-party, third-party defense to the action. But the question is, is it really within or potentially within the policy in light of them actually being on notice that there was a first-party settlement? That's where I'm caught up. If that's the point we're going to, Your Honor, if the complaint on its face made clear that that was the situation, then State Farm did not have to file an action. But ELCO was so clear that even if you've got, if I can say it this way, ELCO says, and other cases say, even if State Farm knows that the complaint is groundless or baseless or even, I think, fraudulent, they still have got to go through the process of filing a declaratory and defending under a reservation of rights. And the point is here, the kind of knowledge that State Farm says it had here, and that's that the grandmother made a claim for the things in the house, that's still something that doesn't automatically preclude coverage. But isn't it kind of going through a useless act because the end result is you know you're not going to have to pay out? Well, no, State Farm thought they did not have to pay out, but I respectfully disagree with that. It's not at all clear that David was, in fact, a resident of his grandmother's household. There's at best, or at worst for us, a question of fact about that. State Farm thought that they knew that, but they didn't. They didn't have all the facts. They made that decision, as a matter of fact, before they had the facts. I'm sorry, Your Honor. No, I just want to put a couple of things on your table, Mr. Ratzak. First, there has been a noticeable clarification, if not a shift of position, in the appellate rulings that seems to have gotten the blessing of the Illinois Supreme Court as far as going outside of the four corners of the underlying complaint, generally, at least insofar as being able to look at third-party actions. Yes, sir. I know because I was on both sides, basically, starting out in Omesco and winding up in Halliburg. Also, we have to consider this notion that the defense here is a no-policy defense and consequently falls under that case that said you can't in any event ascertain that there is no policy. At least that's what your opponents will claim. I don't, frankly, at this juncture, feel that way because I think Murray is definitely uninsured. And in that case, what is it, the Cincinnati case that your opponents point to, there, in fact, was a total rescission of the policy-based appellate material misrepresentation. But at any rate, they deal with that, and I think you have to cope with that. The case that held that the insurance carrier can look to a third-party complaint, I can understand the logic of it because a third-party complaint is a pleading in the case that is being given to the insurance company at that time. This is not a third-party complaint case. This is a case where there's the so-called first-party claim, the first-party claim being when the insured looks to the insurance company to pay for its property. And a third-party complaint. I'm sorry, a third-party claim. So that extension of ELCO to allow an insurance company to consider what's in a third-party complaint should not come into play here. And there is a policy here. Nobody's questioning whether there's a policy. The defense is whether or not there's exclusion. How about just a no coverage? And that and the no coverage comes from looking at the exclusion. And as I see it, and the court may disagree, as soon as I'm able to say the magic words, the insurance company is relying upon a policy exclusion to avoid coverage, that brings it smack within ELCO. Because all the facts that they talk about are facts that they use to establish that the exclusion applied. So it's not a question of whether Marie was an insured. The only question in this case is whether or not the young man was a resident of the household. And that would then determine whether or not the family or household exclusion applied. And I don't see how State Farm can get over that. That's the question. It's what Justice Smith said. There was one argument that I was looking for that wasn't made in either brief, and that is whether, in fact, this defense could have been considered in any event since it overlapped the underlying issue in the tort action or didn't. I thought I addressed it, but very briefly, because I didn't see it being raised in the trial court or by the trial court judge. You don't want to interfere with the jury's range of scope of responsibility. That's the Murphy v. Urso case that said that you can't decide in the declaratory action a fact that is determinative of the underlying personal injury case. In this case, I don't think that deciding whether or not the young man was, in fact, a household resident or not a household resident would have changed in any way the outcome of the underlying case. So there wasn't anything to prevent the court from actually proceeding with a declaratory judgment action. But the point is that ELCO requires that they file this declaratory action. It's a verbatim... It's not infiltrated in consideration of whether there was negligence, presumably. It's not an argument. I'll put it this way. It's not an argument that was raised against me. Nobody explained to me or to the court how it would have affected the trial court's ruling. And the trial court... Actually, the reason the trial court thought it could rule on this case was because it thought that this was an Urso situation. And it's not. It's an ELCO situation. The question here is whether or not State Farms fulfilled its obligation under ELCO. And ELCO said it's not a question of fairness. State Farms' brief went to the question of, well, it's not fair for us to have this information and not be able to use it. Well, the whole point is the fact that you have information doesn't necessarily mean it's the right information. And they put a burden on the insurance companies to go to court and get this resolved quickly. And the difference when they don't do it is that when the insurance company does not provide coverage, which they did not here, then you end up with an inevitable default judgment. And now there's a judgment. And now they've gone too far. And ELCO said when you do that, you lose your right to go back and raise any defense, even if it was a grave one, even if they had concrete evidence that David was not. I'm sorry, concrete evidence that David was, in fact, a member of the household. Didn't Gold and Ratner address that, though? Maybe not. I'm sorry? Gold and Ratner, the case? The question of what to do when you have a question of fact, I just don't believe that they did, so long as there's some question about the facts that establish the exclusion. And that's what we have here. I would hope the court would agree with me. It's surely not clear-cut that David was, in fact, a resident of his mother's household. He's paying rent. He lives down there. It's a separate living quarters. He lives down there with another tenant, who I think also paid rent. It's his home. And even State Farm, if Your Honor will recall, in its memo, describes this as a three-flat, not a two-flat. What really happened here is- Everyone except the mother herself and the grandmother who accepted first-party benefits. Exactly. And then we get back to- Well, that's not an exactly. That's a very big exactly. Thank you. And I needed to come back to that. I understand that. The problem-not the problem. The difficulty is State Farm switched their positions here. They thought that he was a resident of the household immediately after the fire, and their adjusters admitted it, because he lived in his grandmother's house. How could he not be a member of the household? They envisioned this as one house, and they were wrong. And then they switched later on when the first-party claim was made, and the question is, can a first-party claim by the grandmother, not by Antoinette, the mother? And I think that makes a difference here. They keep saying the claim was by Antoinette. It was made by the grandmother, the insured, not by the mother. Can a first-party claim automatically preclude a third-party claim? And when Cooper, their adjuster, said, no, that doesn't- if we made a mistake in paying the first-party claim, all we do is get the money back. If there had been a knowing- if the grandmother, in this case, had knowingly made a first-party claim and said- and let's assume the grandmother was a lawyer and knew what it meant to make a first-party claim, and knew what it meant to be a resident in the household for policy purposes, and went to the insurance company and said, I understand that my son- says, I want to have first-party claim benefits. That's not what she did. She simply did what she was told to do, tell us what burned in the fire. And the mother never made such a claim. If there was any question about whether the grandmother intended to waive anything, I think the court has to keep in mind that the first-party claim and the third-party claim were there at the same time. At that point, State Farm, when they were served this complaint, had to know there was some confusion, at the least, between the family as to what the son's status was, and should have done a further investigation. But they didn't do that. And I think that's why we have ELCO, to avoid the situation where the insurance company thinks it has data, but it needs more data. The declaratory lets the insurance company come to the point. And the problem that they have with the first-party, third-party claim defense is State Farm is basically saying that my client is estopped from making a third-party claim. One thing they need to show for estoppel is prejudice. State Farm can't show any prejudice because Glenn Cooper said it's really easy, we just get the $5,000 back. Unless the court has further questions, we would rely upon the remainder of our brief. It's a complex factual case, but on the surface, relatively simple. At what point does an insurance company have to go to court? I see your usual sense of humor. ELCO says now, not later. Thank you. Good morning again, Your Honors. I please the Court. My name again is Rose Satumi-Allen for State Farm. This case is about trying to have it both ways. If you are a resident relative of a client insured. Can I interrupt you for just a moment here? Because I need to clarify something here. We have a fact that is undisputed that Marie took it both ways, accepting first-party benefits and filing and acceding to her daughter's third-party complaint. There is no dispute about that. Why does that give rise to an estoppel from your perspective? Why isn't that just evidence at trial? In other words, she'd go to trial and let the jury cope with the fact that the mother accepted first-party benefits as some sort of an admission. But is it a judicial admission? No, it's just an admission to be reviewed along with other evidence. Well, the reason why, Your Honors, is because there was no need for State Farm to file a declaratory action because when that third-party claim was filed, excuse me, the complaint was filed. And I want to also clarify, this is not the traditional third-party action. This is an intra-family complaint. It's the same players that were part of the first-party action. I understand, but State Farm under Elko, I mean, suddenly it's Elko that has become the transmitter. But it's really Thornton v. Paul. Elko didn't come into existence until it reversed me, okay? So the truncate is Thornton v. Paul on this estoppel kind of issue. However, are you arguing that the carrier ought to be able to make a decision on the evidence without having to file a deck action or defend on a reservation of rights? Well, not at all, Your Honor. Is this bit of evidence so huge that it supplants the need to have a court decide a deck action, which your carrier was free to bring and obligated under the formula transmitted from Thornton v. Paul by Elko. Well, Your Honor, as you noted in Progressive, that duty to either elect to defend or file a declaratory action only arises if an actual duty to defend is triggered. And at State Farm's position, it was before the trial court and now here, that no duty was ever triggered because there was no potential for coverage. But the no potential for coverage, well, what is your reason? Well, there was no potential for coverage because by virtue of State Farm's institutional knowledge and the fact that the insureds gave State Farm information on which it relied to administer and pay out the first-party claim, that State Farm knew that there was no potential for coverage. If this is the proposition that you're raising, you're seriously challenging the structure imposed under Thornton v. Paul and by Elko vis-a-vis the duty to defend. Because now you're entrusting the carrier to make these decisions and on that basis to avoid coverage. I don't know that you mean to do that because you're now basically shaking those walls built by these cases. Because suddenly it becomes a matter of evaluating whether there is enough data in the carrier's mind to justify a denial of the defense without a decage. I would disagree with that, Your Honor. This is not the sweeping problem that my opponent would make it out to be. This is a very limited, discreet, and unique set of circumstances where you have the same players in a first-party claim taking positions and having statuses defined for purposes of that third-party claim and then reversing course and then trying to attack and attach the second part of the policy. Counsel, at best that's only evidence. And you heard Mr. Ratzak making his plea to the jury here that she's just an old lady doing what she's told by the carrier. Is this a sure winner in front of the jury on that issue? And even if it were, is that enough of a basis for the carrier to take the reins in his own hands with the denial of the defense that Thornton and Elko and the whole, obviously, barrage of cases have now institutionalized? But, Your Honor, those cases were built on the premise that these would be traditional third-party actions in the sense that it would be a stranger to the contract coming in and filing a claim against the insured. And those allegations, when they're groundless, false, and fraudulent, the insurer, if there's a duty to defend, must elect either to defend or file a DEC action. We don't have that here. We do not have a stranger. The underlying hidden issue here is the timing. At what point in this action are you fully apprised of both the first and third party and that you put the other party on notice that they have to defend? She gets a judgment against her when something should have happened before that to protect her. And that's what I think our justice is trying to say, that shouldn't this case have gone to the jury to decide? Because it probably would have come out the same way, but the question is you left her blindsided and she gets a judgment against her. Well, and I'm confused about the jury because if State Farm has a declaratory action, there is no jury. No, I understand what you're saying, but I'm saying shouldn't there have been a trial on the merits on it? Well, Your Honor, I'm glad you raised the timing because that is part and parcel of State Farm's argument. The first complaint was filed in December of 2006, almost two years to the day of following the fire. And that complaint was not tendered to State Farm by Marie, the named insured, but it was rather forwarded by her daughter's counsel. Her daughter was serving as administrator of the estate of the son who had perished in the fire. That was forwarded to State Farm directly. State Farm immediately conducted a traditional third party investigation, which necessarily involved reviewing the first party claim log because there were never two claims here. This was a single loss. This was the same loss, the same players involved, albeit they're aligned differently by the time the third party action is filed. And then State Farm does what it normally does, takes the insured's recorded statement. It conducts the normal investigation, and then it sends out the denial letter in February. That letter is then communicated. It somehow gets into the hands of plaintiff's counsel, and then they amend the complaint. And they amend the complaint to change one word. They add apartment after basement. And then at that point, they don't serve the amended complaint on the named insured. They default the named insured, and that amended complaint is filed in April. The action goes to default in May and judgment in July. If we're going to accept the premise that State Farm had a duty to defend, it would not have been until the complaint was amended to add the word apartment, which in State Farm's position was not inconsistent with anything it discovered in its investigation in either the first or third party claim. Incidentally, I'm going to interrupt you for a moment if I may. I should have done this at the beginning, but it slipped my mind. I should make a disclosure that State Farm is my carrier for my car and for my condominium. It's not, as far as I'm concerned, going to prejudice me one way or the other in the slightest. I bear nobody any ill will, nor do I feel in any way that I would favor State Farm participate. But I thought the disclosure should be made. I appreciate that, Your Honor. With respect to going back to the timing, judgment from amended complaint to judgment, merely three months elapsed. Even if State Farm had gotten a deck action on file, it would not have been resolved by that time, and we'd still be sitting here saying that now State Farm was too late. But the point is that the first party claim was fully adjudicated and closed before the action against the mother was filed. And State Farm did nothing wrong when it relied on its institutional knowledge in determining that because this intrafamily complaint filed relating to the very same loss that it had just finished administering for purposes of the personal property that was lost, and because State Farm relied on information that it did not just get this information, it was given this information by its insureds. State Farm has a reasonable expectation to expect its insureds to tell it the truth and for it to be able to rely on these statements given by its insureds. What truth exactly was given to it, factually? Well, that the grandson lived in the basement with a friend, and State Farm did not. Did they tell you that he was a member of the household? What are the factual disclosures? The factual disclosures were an agent, a first party claim agent, was at the site within days following the fire, two days after the fire, saw the premises, saw what it was like. There was a third floor separate apartment, tenants, and the named insured claims rental income from that, actually made a loss for rental income because of the fire, explained that the grandson and his friend lived in the basement, and the mother and the daughter, named insured and her daughter, lived on the main floor. State Farm immediately identified the friend as not being entitled to first party coverage because he was not a resident relative. However, the grandson is a resident relative. Identified to whom? To himself? To his own clients? No, Your Honor. The evidence is that State Farm communicated this to the named insured and or her daughter. But both were aware that they were being covered because they were resident relatives and that the friend was not. The friend was not a resident relative and so received no first party coverage. They go forward on this and State Farm does not tell them what to do. State Farm gives them context for purposes of itemizing the property that is lost. It's not a restoration company that is in any way associated with State Farm. They work independently with that company. They identify every single item, personal item, that was lost or destroyed in that fire. That includes the grandson's property. Antoinette Ayacula, the mother, worked vigorously to make sure that every item of her son's property in the basement was included. And when she disputed the values assigned by State Farm as part of the first party claim, the only direction that State Farm gave Ms. Ayacula was go get estimates and other values that are consistent with the values you are assigning to these particular properties. Ms. Ayacula did that and State Farm at each instance paid the value that was demanded by Antoinette. And then two years after the fire, now a complaint comes in filed by the daughter against her mother for the death of the son. State Farm had every reason to rely on its institutional knowledge. Is there a stop here as far as the mother is concerned? Or could she, so to speak, change her mind and let the jury decide whether her earlier acceptance was an admission or whether it was a mistake? Now which? Well, no. Is she now stopped forever from making a third party claim? On this lawsuit. Or can she come and make her third party claim and have you present the evidence of her accepting first party benefits and whatever else he said and have her testify she made a mistake? This was not a judicial admission. This was simply an admission. Well, your question assumes that first party and third party coverage are the same. It's apples and oranges. No, it's not. I'm not assuming. But it's different, more different in law than it is in fact. The factual distinctions depend on intent. And I don't think anybody brought up the issue of intent. But the case law decides whether you're, where you're a resident on the basis of the intent of both the victim and on the basis of the intent of the insured. That's a subtle kind of thing here. The distinction in law obviously becomes widespread. But at the vortex, it's a subtle distinction, how the grandmother regarded or how the mother regarded where the grandson lived, whether he was apart, simply coming for visits when he had his meals twice a week or whatever it was with the grandmother, whether his payment of rent was token or whether it was obligatory, really in the sense of having rented the premises, whether having a stovepipe in the house was enough stove in the house to show that he intended to have his meals there or whether he needed a kitchen, you know. Those are the issues, right? Now, are they going to stop the mother from suing so that you can, when she files suit, bar her on the basis of an estoppel claim? Or are you going to try for summary judgment? Is there an issue of fact notwithstanding her admission? And I think you will find that there is based on her, on the affidavit of the daughter. She may not be able to change her mind in her affidavit because of the rules, I guess, what is it, the ISO rule that prevents a move-in from reversing himself on affidavits. But if she gets any kind of third-party testimony that she was not a resident, that she was not a resident, that he was not a resident in the household, then it goes to the jury. It's not an estoppel. Your Honor, it is in this case because of the unique procedural posture that we have. It is the same players and state. And I want to get back to the point that estoppel is a doctrine based in equity. And to accept plaintiff's argument here that state pharmacies stopped requires the court to find. I'm not talking about state farms' estoppel. I'm talking about Marie's estoppel that seems to be in the air here. That somehow the grandmother is estopped because of her acceptance of first-party benefits. And I'm just questioning, is she really estopped or can she sue? And let a jury decide whether she made a mistake or whether she's trying to have her cake and eat it too. The problem that you will have with a jury is that the cake that she eats is worth 1% of what she would otherwise be entitled to. But this is not a question of election of coverage. Once you are, and I think this is part of what we're dancing around here, is once your status is defined, once you are a resident of the household or a resident relative, once you're a named insured, however you are defined as an insured either by definition or straight out, that status doesn't change for purposes of... Yeah, but the question still is in the air. What is her status? You're trying to define her status on the basis of what the grandmother seemed implied when she accepted first-party benefits. The grandmother is not a judge, even on her own case. But it's not who made the claim. It's the fact the claim was made. We would have a completely different case if no first-party claim was made and the complaint comes in against the mother by the daughter for her son. I know that's a little bit confusing. And State Farm has no facts other than this, the complaint, and this. Then I would submit that there would be a question and State Farm would have an obligation to do something because the potential for coverage could exist. However, because of the first-party claim, and it's because of the first-party claim, these facts are so unique I have not been able to come across a case similar to it. But because of the first-party claim and because of the status that was defined as part of that first-party claim, that status carries forward for anything else arising from that very same loss. And there is no equity in requiring State Farm or preventing this. What plaintiff is trying to do is use estoppel to create coverage where it doesn't exist and use estoppel to prevent reaching the actual merits of the case. There is no equity to be done to prevent basically penalizing State Farm for relying on its insurers because that's the only way it gets its information is from its insurers. It has to rely that it's being given accurate information. And if it cannot rely on that information, then the whole process is going to fail. We do not have the traditional stranger-to-the-contract filing a complaint where they make allegations and everyone knows it's false. Well, I think that you're talking about reliance on information. You ought to draw the line. It's one thing, reliance on information and drafting the policy, and that is false information negates the policy. This is what you call false information regarding the claim. That is subject to perhaps a review, an allowance for error. Well, Your Honor, I would also point you to parts of the record, especially Antoinette's deposition where she plainly admitted that the only reason why she filed suit against State Farm was not to enforce a judgment against her mother, but to reach coverage under the second part of the policy, Section 2, the third-party liability side of the policy. And she's really just trying to have both sides. She's trying to be both a resident relative for purposes of the first-party claim and then be a not-resident relative for the first-party claim. Let me just turn the tables just a little bit. State Farm made a decision, or determination, rather, two days after the fire,  and did everything that a normal household family unit would do. He's not a resident relative, so he did not qualify as an insured by definition for purposes of first-party coverage. Had that individual filed suit against Marie, the named insured, State Farm could not be sitting here today and say, oh, wait, there's a question of he's a resident relative and he's excluded. State Farm could not take a different position now, but yet plaintiff is trying to take the very opposite position that she took for purposes of the first-party claim. And I want to make it clear that it's not who made the claim. Yes, the claim was presented on behalf of Marie, the named insured. However, everyone who benefited from that claim was an insured by definition. That would be the daughter and the son. And because of that, those statuses were defined. And those statuses carried over when the parties then realigned and became plaintiff-defendant. Well, let's hold it up to another light. And I don't know where this light will actually shine, but the test is under Elko and Paul whether it can come potentially within the coverage provisions of the policy. And the question is, when she accepts first-party benefits, can it still potentially come within that coverage? Isn't that going to be the criteria, the criterion? Well, for purposes of this loss, no, because of the institutional knowledge. There's simply no other reason. Isn't the Elko test one that will subject the insured to the standard and the carrier to determine whether this claim can come potentially within the coverage, whether the underlying action can come potentially within the coverage provisions of the policy? And the question is, does the acceptance of first-party benefits, if we allow the insurer to look at that, does that look, tell us that this person cannot file a claim that can potentially come within the coverage provisions of the policy? Isn't that going to be the test? Well, it has to be for this loss. I'm looking at this case, this unique set of circumstances. In the traditional case where you don't have a first-party claim that is part of the third-party claim by virtue of the fact that these are the same law, there was never a different place for State Farm to look. It was the same law. It was the same claim. It's the same loss. So in those circumstances, no, if you have the same players filing a claim against each other, named insureds by definition, the household exclusion applies. Clearly what you're saying is ELCO doesn't apply in this situation, that they're playing a game and that they're estopped. In plain English. What I'm saying is it cannot apply because it would be using estoppel, which was supposed to be a shield for the insured as a sword, and they can't do that. So his hypotheticals are getting outside the realm of he's using ELCO when it doesn't apply. ELCO doesn't apply because there is no potential for coverage here for the reasons we've been talking about. There can never be a potential for coverage in an inter-family complaint that is filed based for the sole reason of attaching second-party coverage, or excuse me, Section 2 liability coverage, when those very same entities or those parties received first-party coverage based on status that was conferred on them. I'm going to cut you off. Because I'm looking out here and seeing two other cases, and I think we all know the facts and the law here pretty well. We'll let Mr. Rasek try and argue about estoppel now. Okay. Thank you, Your Honor. So you've got to answer for me. Why are you trying to create estoppel where it doesn't exist? Estoppel exists because they did do what they were supposed to do under ELCO. Your Honor mentioned to me the Gold and Ratner case. Gold and Ratner, and I had to go look at it, made clear you don't have to file a declaratory if there's clearly no potential for coverage. The problem that they have here is that at least when we amended the He said he resided in a basement apartment. So if you have a complaint for a wrongful death, and the person resided in a basement apartment, that should trigger some light in the insurance company's part, that he may not be a resident relative. And that should be enough to cause them to go file the declaratory action. And that light cannot be shut off by the insured? No. I think for the reasons, and I hate to always use the court's own words, but there was a question of whether or not when the grandmother filed the first-party claim, first, if she had any inkling that what she was doing had anything to do with being a resident relative. Nobody talked with Marie or Antoinette about what it meant to be a resident relative. That's something that State Farm did by itself. If they'd gone and talked with these people about what it meant, maybe it would have gotten worked out. And keeping in mind, the bottom line is that Gwen Cooper said, we aren't harmed. It's at page C859. Gwen Cooper said, we can, in fact, just undo this. And if you can't undo it, if State Farm is unable to do it, there cannot be an estoppel because you need prejudice. And that does away with the estoppel argument that they're trying to hold against my client, as opposed to my client's argument that they're estopped because they didn't do the very simple thing of going to court right away and avoiding all this litigation, which is, I submit, why alcohol was out there, just to stop what's happened. It's now been seven years, and this shouldn't have taken seven years. It would have, if they'd gone to court. We would have had this argument, this solution years ago, unless your Honor said further questions. Thank you. Both of you were very entertaining and enjoyable. Since it's getting near the end of the quarter, obviously you don't have too long to wait to hear the results. Thank you.